(80 Misc. Rep. 513.)

### WOOD v. HARPER & BROS.

(Supreme Court, Appellate Term, First Department. · May 8, 1913.)

CONTRACTS (§ 229*) — SUBSCRIPTION TO PUBLICATIONS — CONSTRUCTION — "PRODUCE."

    Under a contract by which plaintiff, who conducted a subscription agency, in consideration of his publication of advertisements in his catalogue offering combinations of publications at special subscription prices, was to be allowed certain rebates on his production of subscriptions to defendant's publications in reduction of his indebtedness to defendant, subscriptions originally obtained by a news company, turned over to another publisher, and in turn turned over to plaintiff, were not subscriptions produced by him, and hence he was not entitled to rebates thereon.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1045–1057, 1059–1066, 1070, 1077; Dec. Dig. § 229.*

    For other definitions, see Words and Phrases, vol. 6, p. 5654.]

Appeal from City Court of New York, Trial Term.

Action by John T. Wood against Harper & Bros. From a judgment in favor of plaintiff upon the verdict of a jury for $600.91, and also from an order denying defendant's motion for a new trial, defendant appeals. Reversed, and judgment ordered for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued April term, 1913, before GUY, GERARD, and PAGE, JJ

John Larkin, of New York City (Alexander S. Andrews, of New York City, of counsel), for appellant.

Henry Staton, of New York City, for respondent.

GERARD, J.   This action was brought on contract to recover $551.23 for procuring subscriptions to Harper's Magazine, Harper's Weekly, and Harper's Bazaar. Plaintiff claimed $1,292.23, but admitted that he owed defendant $741 on a printing bill. The answer was a general denial and a counterclaim for the said printing bill.

The contract between the parties was in writing, and is found in letters exchanged between them. In plaintiff's letter he states that he is very anxious to liquidate his indebtedness of $741.82 to Harper & Bros., that he is about to get out a catalogue, and that:

"To put the matter to a crystallized proposition, I am willing to publish one-page advertisement for you in 1,000,000 catalogues. This advertisement is to be paid for by rebates on production of subscriptions. The money so earned is to be applied to a reduction of my present obligations to you until it is wiped out entirely. * * * I hope you will see your way clear to allow me liberal rebates."

Some conversation occurred between plaintiff and defendant's representative, and the defendant's representative then wrote plaintiff the following letter, stating that:

"In consideration for the publication of a one-page advertisement in your edition of 1,000,000 catalogues for 40 different publishers, and for other publicity in said catalogues, we agree to accept subscriptions from you until October 1, 1911, as follows: $3.20 for Harper's Magazine; $3.20 for Harper's Weekly; 75 cents Harper's Bazaar. At the end of each month we will give you a rebate of 40 cents on each Magazine and Weekly subscription and 15 cents on each Bazaar subscription."

Plaintiff himself testified that, in the trade or subscription business, the word "produced," in respect to obtaining subscriptions, has no exact meaning. It appears that the business in which plaintiff was engaged, and with reference to which his catalogue was printed, was that of a subscription agency, which catalogued several magazines or periodicals together, at special subscription rates for each periodical, if the periodicals were subscribed for in the combinations stated in the catalogue. There were other people in the same business—a man named Grumieaux, and the American News Company.

At the commencment of the trial, the plaintiff and defendant stipulated:

"That plaintiff, pursuant to the contract between the parties, forwarded to the defendant the following subscriptions: For the Weekly, 768; for the Bazaar, 1,045; and for the Magazine, 1,991—and that all of said subscriptions were procured by the American News Company, and transmitted through Pearson's Magazine, and by Pearson's Magazine to John Thomas Wood, except the following: The Weekly, 153; the Bazaar, 209; and the Magazine, 398. Defendant concedes that the catalogue was printed and distributed, and makes no question on that score whatever."

The defendant agreed to pay plaintiff for subscriptions produced by him. He did produce, in one sense, certain subscriptions, and the de-

fendant defends on the ground that these subscriptions had originally been obtained by the American News Company, and turned over by the American News Company to Pearson's Magazine, who in turn turned them over to plaintiff, who then turned in the subscriptions to the defendant, claiming his compensation.

Defendant had agreed to pay plaintiff for subscriptions produced by his efforts. These subscriptions were obtained by the American News Company from people who never saw plaintiff's catalogue, and the American News Company, by turning over these subscriptions, enabled plaintiff to obtain a rebate which the parties had contracted should be given plaintiff. It was not the intention of the parties that plaintiff should be allowed the generous rebate or commission given him, except on subscriptions produced through his efforts, and the ingenious scheme by which subscriptions taken by the American News Company were transferred to plaintiff was not within the contemplation of the parties. These subscriptions, were not produced by plaintiff. They were the result of the efforts of the American News Company. If the American News Company had a contract with defendant, it can assign its cause of action for any subscriptions it obtained to plaintiff, who can then only recover at the rate of compensation agreed on between defendant and the American News Company. But plaintiff cannot combine with the American News Company, and obtain from defendant, for subscriptions "produced" by the American News Company, a compensation larger than that which defendant may have promised to give the American News Company.

As plaintiff does not deny defendant's counterclaim of $741, and as defendant admits that it owes plaintiff for subscriptions produced directly by him the sum of $251.75, the judgment must be reversed, and judgment ordered for defendant for $741, with costs, and with interest from December 31, 1909, less said sum of $251.75. All concur.